08-50-15 Frazier v. United States Good morning. May it please the Court. The appellant has come before the Court today seeking the correction of an illegal prospectus. It was issued by the Bureau of Reclamation, seeking proposals for the resort concessions located at Lake Berryessa in Napa County, California. Since the completion of the briefing in this appeal last April, there have been some developments in this case, which I think bear directly on the appeal, so I would like to inform the Court of those developments, if I may. The Bureau has issued its awards for the Lake Berryessa concessions. Now, I think the term award is a bit of a misnomer, because really all that has been awarded is the opportunity to negotiate with the Bureau to complete a concession contract. Now, do these affect the relief for the appeal, or does it significantly change the situation? Yes, and I'll tie this in in just a minute, because I think the Court needs to understand what has happened in a complete sense. To date, none of these awardees have completed their contracts. We don't know why, because we've been denied a debriefing, so we don't know why that's happened. Now, the Bureau has accepted Markley Cove's proposal. It has not been finalized. Indeed, there has not even been an overture to negotiate the contract. Our understanding is that Markley Cove has been advised that they will be negotiated after all the other contracts have been completed and negotiated. So they've awarded the contract to a particular group? To one of the appellants, in this case Markley Cove, has been awarded the right to negotiate with the Bureau for its... Now, your opponent is looking perplexed. Is this brand new information? Is there something that... It shouldn't be. I don't think it is, but... Okay, we'll continue. In any event, the Rancho Monticello and Spanish Flat proposals were rejected in favor of a proposal by a company called Pensus Group, and to date our understanding is Pensus Group... Does that mean now that the Fraziers, they're Markley Cove, right? Correct. Do they withdraw from the case then? No, they do not. But certain aspects, and I think, again, if I could beg the Court's indulgence... Well, if they won the contract, they don't want to protest, do they? They want to protest only to the extent that 96-375 has been interpreted incorrectly, and the reason they want to do that is because they could go back, reformulate their bid in accordance with the proper interpretation of 96-375. That would enable them to expand their bid because they would have, because of the assurances that the improper interpretation... I'm sorry? What is the improper interpretation? The improper interpretation is the government has interpreted the statute to mean they can simply select and choose whichever permanent facilities they want to pay for, and that the rest of it they don't have to pay for. But that's a different case than the one that's before us, right? And that's framed differently than the question before us, is it not? No, it is simply a refinement because there are three claims that we have put before you. Now, the first two that relate to the contract termination dates. Those claims, regrettably, we're going to have to say are probably moot, even though we believe that they were improperly imposed or provided for in the prospectus and that they related to the ability... But those were a challenge, really, to the contract rather than a challenge to the prospectus. Well, we strongly disagree with that, Your Honor, but the fact is... Well, it's the contract that expires in nine years, six months, right? Understood. Again, Your Honor... It's not the prospectus that is affecting this. It's the contract itself, right? Well, we disagree, but that's moot. Okay, well, if it's moot, I'm happy to hear it. Your Honor, the reason it's moot is that going back and trying to correct this prospectus to include the additional six months would not provide our clients any relief. I'm trying to figure out how you can represent two clients, one of which seems to be at least substantially satisfied, I would think, whereas the Monticello Resort people are losers, right? And the Spanish Flat, correct. And the Spanish Flat people are losers. Correct. Do you have any difficulty representing all three when you have... No, and the reason is that Markley Cove, as I was trying to explain, Markley Cove still wants to go back and redo its bid pursuant to a prospectus that properly interprets 96-375. But they're no longer challenging the contract they won. I mean, the bid... Are they protesting the bid that they won? They are protesting, yes, they are protesting to the extent that the statute is not being properly interpreted. I don't understand, so what's happened to them? I mean, so you're saying they still have a protest remaining because they're being forced to take some of what they consider the permanent facilities away? What they're being forced to do is to live under a contract that wrongly interprets 96-375. Is this a ten-year new contract? No, that's the one where they can select the permanent things. But they haven't... I have a hard time seeing how this issue is kind of ripe and ready for us. I mean, they're going to get the contract. And then after they get the contract, I guess they can file some action that they haven't done it right. No? No, I'm sorry. Please do not think that just because they're sitting down negotiating that they are going to get a contract. But they're going to get to select... Nobody yet has signed a contract. The negotiations with all the other awardees have not been completed, and probably because of this very lawsuit and the 96-375. The Markley Cove people are going to be able to say, we'll keep these facilities, right, the permanent facilities, and they wouldn't have to compensate themselves for their own facilities, right? That's correct, but that's not why they're still in it. They are in this because... So they don't have a problem with this selection? If we go back to the prospectus and correct the prospectus to include a proper interpretation of 96-375, they would be able to change their bid in such a way that it would be a material change so that, yes, I agree that... They don't have a problem. If I understand right, they don't have a problem because they're going to be able to say what we keep and what we don't keep, and they can keep all of their trailer hookup locations if they want them, can't they? Well, they don't have any trailer hookup locations. They are principally a docking... Okay, well then they can keep their docking facilities. They don't have to designate them to be removed, right? That's correct. Markley Cove, it is a closed question... What can they complain about? Well, what I'm trying to explain is they would like to go back and redo the bidding process so that they can change their bid in conformance with a proper interpretation of 96-375. Now, how can they do that? What would the bid change do? It would change because a proper interpretation of 96-375 would say that all of the permanent facilities of the existing concessionaire must be paid for. Not some, not pick and choose, all of them. Based on that assurance... Oh, they want the government to pay them for their things and then they'll keep them too. No. At the end of the day, what that allows the companies, including the disappointed bidders here, what that allows them to do with the assurance of 96-375 is go get their financing. Because the banks who are going to lend them money to improve these facilities, like the Bureau wants, they have to be able to take the assurance that 96-375 is going to protect those assets at the end of the contract. What do we leave for the other folks seeking here? The other two appellants want to go back, similar to Markley Cove... Do they want to undo the whole...it's a pre-award bid protest. Correct. We're seeking a correction to the prospectus. So they want a redo over on the prospectus, right? Simply to...yes. And so you started, I thought, by saying that your other client has kind of changed his view of what he's seeking here. What is he seeking that's different than what the other folks are seeking? Talking about Markley Cove. They are seeking...all of the appellants are seeking the same thing. A complete do-over. They're seeking a do-over on the prospectus to the extent that a proper interpretation of the statute must be included. And yes, that would require a re-procurement process. So is your view that they're seeking something different, or their position has changed, or is it exactly the same as it was? The position's always been that. One of the complaints, and the major complaint... So why did you come and...I mean, it's informative that you're telling us what's happened, but does that change in any way, shape, or form the arguments of the status of the pending case? The case that is before the court, really, because of what has happened. Because the Bureau decided to simply move ahead with the award process, despite the pendency of the appeal. They moved ahead, they did all the awards, and they basically acted as though the appeal didn't exist. Well, but Mr. Jagger, even taking our appeal that we have now, and not dealing with these matters you're bringing to us, the statute doesn't anticipate the current situation, does it? No, it doesn't. The statute says nothing about when the government requests removal of facilities. It does not. It says if they ask that facilities not be removed, they've got to pay for them. That's what the statute says. Correct. But it says nothing about if they ask you to remove them. Correct. So how can... What's inconsistent in the prospectus with the statute? Because the prospectus specifically says, we, the Bureau, get to select and choose which of these that we want. We will order people to take the facilities that we don't want off the property. Is the government saying they won't pay for something if they... Absolutely. In fact, they're doing it right now. There are millions and millions of dollars worth of... Well, that may be a different lawsuit. Understood. If it happens. And it may or may not be successful. Understood. But certainly the circumstance where the government requests removal is not covered by the statute at all, right? The statute doesn't address it, no. So we don't have anything to address at this point, do we? Yes, we do, because the government is now interpreting the statute in a way that it is not provided for in the statute. And I think if you go and you look at the legislative history, legislative history is very clear that the government can't just select and choose. The government can't refuse to pay for certain permanent improvements that it deems it does not want. And the best example of that are all the roads, the parking lots... If it deems it doesn't want them, then it does not take them, why should it pay anything? It doesn't own them. If you read the statute, the statute specifically says... Where does the statute specifically say they have to pay for something that they don't take and they don't want, that they ask you to remove? Well, it's not in those terms. But what the statute does provide is that the improvements and the facilities that are placed there by these concessionaires remain their property. Well, if it remains their property, and if the intent of the statute... Where does it say it remains their property? In section 5B. All permanent facilities shall be considered the property of the respective current concessionaires. And what does that lead you... Further, any permanent additions or modifications to these facilities shall remain the property of said concessionaires. So where does that lead us? If it's their property, does that mean that the government has to pay for it? Yes. If the government doesn't want it, then the government still has to pay for it? If the government says... What if it can't be removed? What if it can't be removed? And again, I go back to these improvements such as roads and parking lots... That's the situation. This hasn't anticipated one bit, has it? The statute doesn't say anything about that. The statute is vague on that. It doesn't say a word about it. The trial court found that... They've asked you to remove it. It's your property. You take it. How does one remove a road? Well, obviously, as the trial court dealt with in great detail, you have to assume that you factored that into your 10-year contract and got full compensation for it while it was in place. I think what really has happened, and Mr. Silverbrand's predecessor at the trial court, he even acknowledged before the court that they were going to use these roads and they were going to use these parking lots. Of course they're going to use them. Otherwise, there's no access to the land. And has the government told anyone that they're going to make them, force them to remove these roads? They have refused to pay for them. And yes, in fact, they have said, try to take them, fill them back in. We don't care. So they haven't said they're going to use them. They're telling the property owner to take their property with them. Again, what is obvious is they are going to use it. And if you look at any of the business plans, and including the visitor service plan, the underlying documents, the ROV, for example, it contemplates using the roads, using the parking lots. But it's your property. You can take it with you. Now, if you don't take it with you, you've abandoned it. And I suppose someone else who comes in after you can use it. Right? That's not what is contemplated at all. But none of this has happened, right? Nothing has happened. Though it is happening as we speak. It is happening because Well, that's another lawsuit. This lawsuit was filed a long time ago. So I guess I'm having trouble seeing how any of the issues you're raising with respect to your argument as to how the statute ought to be interpreted is anything we ought to be considering at this juncture. Because it directly affects the prospectus and the procurement. If 96-375 is interpreted as we are arguing to the court, then the prospectus has to incorporate that definition, which means that all of this has to be, all of these improvements have to be paid for, such as the roads, such as the parking lot. But you've already said they've asked you to remove it. But we're saying that's contrary to the statute. Where is it contrary to the statute? You said it doesn't contemplate that. It says the facilities shall remain the property. They do. They're your property. How can you order someone to take away a road? Because it's on the government's land. The thing is, the trial court found that this statute was vague and you should go look at the legislative history. The legislative history is quite clear. The statute is not designed to do anything other than protect the property rights of these owners. So it is a vague statute. The legislative history needs to be explored. Let's hear from the governor. I was going to say I'm running way past my directs. You are. We'll save some rebuttal time. Mr. Silverbrand. Thank you, Your Honor. May it please the court. As appellant stated, Mark Lee was a winner of this solicitation and when its contract expires on May 26, 2009, it will be free to use its property however it chooses. In fact, it factored the use of that property into its winning bid. Both Rancho Monticello and Spanish Flats contracts have expired as of this date and they've both filed plans to remove their property because the government has told them they are free to take whatever property they choose. Those are the trailers and the property that everyone agrees or not everyone agrees but at least is distinguished from roads and parking lots. Roads and parking lots as Judge Rader said previously, these were 50-year contracts, Your Honor. They could have factored in the useful life of a road. I personally don't know what the useful life of asphalt is but I don't think it's 50 years. They chose to build these roads knowing their contracts. The extensions, Your Honor, were approximately 19 and a half years for Rancho and Spanish Flats but from the beginning of the original contracts, it was 50 years, Your Honor. Appellants simply have not demonstrated that any of their claims here that pertain to their contracts have anything to do with the solicitation. The solicitation did not change any of the terms existing in the current concessionaire's contracts or now Rancho's and Spanish Flats expired contracts. Now, appellants have conceded that They knew the length of the contracts when they entered them, right? They did, Your Honor. When they renegotiated the current extensions which were approximately one 10-year extension and one 9.5-year extension, they negotiated for those. The trial court also pointed out that a lot of these facilities are a bit dilapidated after 50 years, right? The trial court did point that out, Your Honor. Yes, but let's not forget, they are free and, in fact, they have indicated they can obtain whatever salvage value they choose from the existing permanent property. So as a practical matter, what's going on? So they want to be paid I guess it would be proportional. They wanted the prospectus and government's position to be that we're going to pay these folks for anything that they feel they're unable to take, or roads or that sort of thing. Is that what's going on here? That's how I understand appellant's position. And what would happen to if any one of them got the contract then? Would they be demanding that they be paid for the road, which they're still going to be able to take That's what it sounds like Markley wants because they did, in fact, get the contract and they did factor into their winning bid some of the permanent property that is already there. So it sounds like they want to be paid for that property and then have free use of it as well in the existing, in the new contract. So they seem to be, for lack of a better term, trying to double dip and trying to get paid twice for the same thing. So in their contract bids they included that it was part of what they were offering up was this use of the road? The prospectus told any prospective bidders that they were free to bid on any existing permanent property and factor that into their bid. Now with the understanding that any new bidders that weren't current concessionaires would have to pay for any property. So they got an advantage in the bid in terms of having to come up with less money because they got the advantage of what they already owned in terms of the permanent facility. Yes, Your Honor. In any case, nothing in public law 96-375 states that appellants should be free to abandon their property and then bill the government for it. That is just an absurd reading of the statute, Your Honor. It simply says that appellants own the permanent property. They are free to take any property they want except in the case where the government instructs that they should leave some property. In the case that the government instructs that they leave that property, they are to be reimbursed for that property. And that's exactly what happened here, Your Honor. Here I may differ from a suggestion made by my colleague, but I want to know sort of where the government is on that. It seems to me that one could argue that the statute is not ambiguous or not silent to the extent that the statute says that the option of the Secretary of the Interior may require which clearly to me could be argued to say that the statute is clear that it's up to the Secretary and he has the option  and pay for them or not doing so. I agree wholeheartedly, Your Honor. I think the statute is clear. The only thing the statute does not specifically mention is well if they choose to abandon their property what happens to it? I see your and Judge Rader's comments but it seems to me that it may require this inherently and it may not require it. I agree, Your Honor. The Secretary is free to require the property to reimburse for it or not require it and have appellants remove the property. It seems to shine through until we see the issues that have arisen that they were talking about such things as the trailers or let's call it the semi-permanent or fixtures that can be removed and not things like roads and parking lots. But as I said earlier and as Judge Rader pointed out, Your Honor these were long-term investments. These were not short-term investments. Well, that's a different question. If they assume this is a permanent improvement that's not what we're talking about in the statute. But they put those roads there knowing that they had a contract with a finite time, right? Yes, Your Honor. That they were building permanent facilities on the government's land. Yes, Your Honor. That wasn't my question. My question really is what, as you read the plain language of the statute did they even contemplate that there would be such issues as a road? Well, it says permanent facilities, Your Honor. Trailers are not permanent facilities. Is a road a facility? I think it could be classified as a facility. It could be classified as property because permanent facility in the same sentence is considered the property of. So I would argue... It might have been buildings and outbuildings and whatever other kind of construction might not have been made. I think that would be encompassed as well and any of those permanent facilities, are free to remove. Now granted there may not be much salvage value in old asphalt but there may be some salvage value in the plumbing fixtures in any of the electrical fixtures they own in any of the other permanent improvements they're free to deconstruct the roads if they want. There's nothing preventing them from doing that. And the statute certainly does not contemplate payment for abandoned property. There's nothing in the statute that so contemplates, Your Honor. And for these reasons and the reasons in our brief we respectfully request that you affirm the decision of the trial court. Thank you, Mr. Schillenbrand. Mr. Jager. Thank you. I think a few things need to be clarified. It is incorrect to say that these appellants built the roads and the parking lots and everything else based on the contracts. They did their improvements based on their understanding of 96-375 which was going to protect them in the event that they lost these contracts. The whole purpose of as reflected in the Senate report and I urge the court to go look at the Senate report that accompanies this statute. It says specifically that the intent of that statute is to protect their investments so that it would encourage the building of high quality facilities at the lake. So they did not build these facilities and do all these improvements based on a contract. They did it because they understood 96-375 was going to protect them at the end of the day and they would receive fair value for what they had put in it. Do you agree with what the government said in terms of the Markley Cove resort? In their bid are they including the portion of the roads and the permanent facilities? They may have. I don't know the specifics of that. Well if they did, isn't that sort of relevant to what the relief they're seeking here? It could be, yes. How are we going to deal with that? We need to keep in mind the relief we're seeking here. We're seeking to go back and have this prospectus redone so that especially with respect to Rancho Monticello and Spanish Flat, so that they would be able to compete based on the guarantees that are provided by 96-375. If Markley Cove included its dock facilities in its bid which it apparently did since it won what are they asking for now? They get to keep their dock. They get to use their road. What they are trying to get is to go back again. Is he right that they want the government to pay them for the permanent facilities and then use them? The double dipping allegation is completely incorrect. Well then what do they want? They want to go back and redo the prospectus. They want to enter the original bid that they wanted to enter which would have been based on the guarantees of 96-375. But they get the same thing. It would have enabled them to bid a bigger project because they would have had access to more funds. That's what Markley Cove wanted to do. I think what brings this A little risky isn't it? Yes it is. It is risky for them, but they believe in it. Now, what brings this more into sharper relief is what's happening with Rancho Monticello. They truly want to go back and have this re-procured because if they get the guarantees of 96-375 into the prospectus, they will be able to bid on Why? So how would that change that as a practical matter? If they get those guarantees, then you're saying what? That they'll assume It would change their business plan. This whole procurement was based on business plans. Don't forget that the other bidders No, but tell me as a practical matter it's going to change them what? Because they're going to assume that the government's going to have to pay them for whatever portion of the road? No, it's not that they get to assume it. It's the lender who gets to assume it. They can now use the permanent facilities as collateral. And they can go to the bank and say, look, we have an asset that we can borrow substantial funds from. All of this is based on business plans. And keep in mind the reason that Pence's group has not signed this contract yet is because in their business plan, they haven't factored in any kind of capital. Wait, who's Pence's group? Pence's group is the one that was awarded these contracts for Mark LeCoe. They haven't signed on yet. And the reason they haven't signed on is because in their bid, the initial capital investment is quite low. Because they think the statute isn't going to make them pay for anything at the end of the day. There's a couple other points that I think need to be pointed out. The court noted these dilapidated facilities. It has to be pointed out that all of these facilities have been valued. Some of them have been valued at zero. No one's going to be paying for any kind of no one certainly is going to be overpaying for any of these facilities. If a particular facility has been valued at zero, they're not paying for it. But if they're fully depreciated, then that would be the end of that valuation, whatever happens to those facilities, wouldn't it? It could. But, again, none of that has happened in this case because virtually, well, not virtually, all of the facilities have some value to them. What really has not been addressed here, what the government wants to talk, you know, you want to talk about double dipping, the government wants a windfall. It wants all the roads, all the parking lots, and keep in mind we're talking about eight-figure sums that were put into constructing these things. Erosion control, terracing, everything that makes this lake accessible to the public has been paid for by these individuals at the encouragement of the Bureau. The Bureau now wants to simply take that over for free. And they acknowledge that. Their trial counsel acknowledged that before the trial court. To say that they are free to deconstruct the roads and to dig things up also is incorrect. Right now, there are all kinds of... When were the roads built before the public law was passed in 79 or after? I think a lot of these, there may have been some that were built prior to that time, but most of them were built afterwards. They are not free to just simply go in and start digging things up. There are environmental laws that are going to come into play. The Bureau has already told them that they can't do certain things without getting certain permits or without oversight. They are not free to just walk in and start tearing things up. That's not going to happen. So, essentially, they are stuck at the lake with all of these assets and the government is simply... I think the government is just playing a war of attrition here. But the public law itself put the limits on the contracts, right? Yes, it did. Thank you. Okay. I think we've run out of time. Thank you for your time. We'll do our best. We appreciate your consideration. Thank you, Mr. Jager and Mr. Silverbrand.